**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:08CV476-FDW-DSC**

| | |
|---|---|
| NANCY H. SAWYER, )<br>      Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security Administration, )<br>      Defendant. )<br>) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment and Motion to Expand the Record" (document #8) and "Memorandum in Support ..." (document #9), both filed March 25, 2009; and the Defendant's "Motion for Judgment on the Pleadings" (document #10) and "Memorandum in Support of the Commissioner's Decision" (document #11), both filed May 26, 2009. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Judgment on the Pleadings be granted; and that the Commissioner's decision be affirmed.

**I. PROCEDURAL HISTORY**

On October 27, 2003, Plaintiff filed an application for a period of disability and Social Security disability benefits ("DIB"), alleging she was unable to work as of August 28, 2003. Plaintiff's claim was denied initially and upon reconsideration.

Plaintiff filed a timely Request for Hearing, and on September 6, 2006 a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated January 22, 2007, the ALJ denied Plaintiff's claim, finding that Plaintiff had not engaged in substantial gainful activity since her alleged onset date; that Plaintiff suffered from fibromyalgia, Sjogren's syndrome (which Defendant concedes would cause dry eyes and mouth),[1] obesity, status post ankle fracture, and asthma/allergies which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1; that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform work at the light[3] exertional level which did not require exposure to concentrated amounts of dust, smoke, fumes or other similar pulmonary irritants; that this RFC was sufficient to permit Plaintiff to perform her past relevant work as a dental hygienist, both as she had testified that she performed it and as that job is performed generally; and that accordingly, Plaintiff was not disabled.

---

[1] Sjogren's syndrome is "a symptom complex of unknown etiology, usually occurring in middle-aged or older women, marked by the triad of keratoconjunctivitis sicca with or without lacrimal gland enlargement, xerostomia with or without salivary gland enlargement, and the presence of a connective tissue disease, usually rheumatoid arthritis but sometimes systemic lupus erythematosus, scleroderma, or polymyositis. An abnormal immune response has been implicated." *Dorland's Illustrated Medical Dictionary* 1871 (31st ed. 2007) (*Dorland's*).

[2] The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3] "Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

By notice dated August 14, 2008, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on October 17, 2008. On appeal, Plaintiff argues that the ALJ failed to properly evaluate her limitations in vision and in the use of her hands and fingers, which essentially is a challenge to the ALJ's determination concerning her RFC. See Plaintiff's "Memorandum in Support ..." (document #9). The Plaintiff also moves the Court to expand the administrative record and consider two items of "new evidence," discussed below. Id. at 21-24. The parties' cross dispositive motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

3

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

The undersigned notes that Fourth Circuit precedent dictates that a District Court cannot consider evidence which was not presented to the ALJ. Smith v. Chater, 99 F.3d 635, 638 n.5 (4th Cir. 1996), citing United States v. Carlo Bianchi & Co., 373 U.S. 709, 714-715 (1963). Reviewing courts are restricted to the administrative record when determining whether the decision of the ALJ is supported by substantial evidence. Wilkins v. Secretary, Department of Health and Human Services, 953 F.2d 93, 96 (4th Cir. 1991), citing Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972).

In order for a reviewing court to remand a case to the Commissioner for the consideration of additional evidence, the evidence must be new, material, and there must be good cause for failing

4

to present the evidence earlier. See 42 U.S.C. § 405(g); Wilkins v. Secretary, Department of Health and Human Services, 953 F.2d 93, 95-96 (4th Cir. 1991); and Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir.1990).

For these purposes, evidence is "new" if it is relevant to the determination of disability at the time the application was filed and not merely cumulative or duplicative. Wilkins, 953 F.2d at 96, citing Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990).

For evidence to be considered "material," it must be shown that there is a reasonable possibility that the additional evidence would have changed the outcome of the decision. Wilkins, 953 F.2d at 96, citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985).

Lastly, Plaintiff must exhibit good cause for failing to present the evidence earlier. Melkonyan v. Sullivan, 501 U.S. 89, 100 (1991). While the Fourth Circuit has not made a specific finding as to what constitutes "good cause," other circuits have ruled that, to establish the existence of "good cause," a plaintiff must show that the additional information was not available to him until after the conclusion of the administrative proceedings. See, e.g., Geigle v. Sullivan, 961 F.2d 1395, 1396 (8th Cir. 1992); and Waite v. Bowen, 819 F.2d 1356, 1361-1362 (7th Cir. 1987).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[4] As an initial matter, Plaintiff argues that

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

5

treating physician Dr. Glenn McCain rendered an opinion that she was disabled which the ALJ failed to consider in evaluating the credibility of the Plaintiff's subjective complaints of pain. However, Dr. McCain's "opinion," that is, a notation that Plaintiff's pain was moderate to moderately severe, does not amount to an opinion that she was disabled, much less establish that her pain was disabling. See Mastro v. Apfel, 270 F.3d 171, 177-178 (4th Cir. 2001) (affirming disregard of treating physician's opinion where it "was based largely upon the claimant's self-reported symptoms" and was not supported by medical evidence); see also Arruda v. Barnhart, 314 F. Supp. 2d 52, 76 n. 24 (D. Mass. 2004) (noting that a physician's assessment of claimant's pain as moderate rather than severe supported ALJ's assessment of plaintiff's credibility).[5]

To the contrary, the medical record provides substantial evidence that supports the ALJ's essential conclusion that Plaintiff suffered from, but was not disabled by, her combination of impairments. Concerning the Plaintiff's alleged visual impairment, the record shows that Plaintiff's Sjogren's syndrome was "mild" in July 2004 (Tr. 323); in February 2005, her tear film appeared to be "fairly good" (Tr. 297); and she showed improvement and control of her symptoms in May and July 2005, as well as in May 2006. (Tr. 326-327, 329). Regarding her difficulty using her hands and fingers, in November 2003, treating physician Dr. John Goldman noted that Plaintiff had full range of motion without pain or swelling in her hands. (Tr. 247). An RFC assessment completed

---

[5]Assuming Dr. McCain had opined that Plaintiff was disabled, the Fourth Circuit has established that a treating physician's opinion on the issue of disability need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

by Dr. David Buchin, a state agency medical consultant who reviewed the medical evidence of record in February 2004, noted a recent medical examination finding that Plaintiff's grip was "adequate," and opined that Plaintiff had no manipulative limitations. (Tr. 128, 132). This assessment was affirmed by a second state agency medical consultant in June 2004. (Tr. 133). Similarly, state agency examining physician Dr. Glenn Baumblatt observed in February 2004 that Plaintiff had adequate grip strength and could handle objects adequately. (Tr. 278). Finally, no physicians ordered tests to be performed on Plaintiff's hands, further undermining Plaintiff's subjective complaints. (Tr. 251, 323). See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's claim of disabling hand pain was not credible when no physician ever performed a nerve conduction study, x-ray, MRI, or EMG).

Moreover, the record is also clear that the Plaintiff's medication was effective in relieving at least some of her pain. Plaintiff reported to Dr. McCain that her fibromyalgia-related pain had reduced by seventy-five percent (75%) while she took Ultram. (Tr. 324). See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"); and Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965) (finding that symptoms that can be controlled by medication are not disabling). Plaintiff also received a prescription for Baclofen,[6] which she elected not to take, despite experiencing positive effects with it in the past. (Tr. 328-329). See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) ("an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility").

---

[6] Baclofen is a muscle relaxant used in the treatment of spasticity of spinal origin. *Dorland's* 193 (31st ed. 2007).

The ALJ properly applied the standard for determining a claimant's Residual Functioning Capacity based on subjective complaints of pain and, in this case, the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was not fully credible. The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's fibromyalgia, Sjogren's syndrome, obesity, status post ankle fracture, and asthma/allergies – which could be expected to produce some of the pain claimed by Plaintiff – and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in Craig. However, the ALJ also correctly evaluated the "intensity and persistence of [her] pain, and the extent to which it affects [her] ability to work," and found

Plaintiff's subjective description of her limitations not to be credible.

"The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles, 29 F.3d at 921, citing Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted). In this case, the record before the ALJ clearly established an inconsistency between Plaintiff's claims of inability to work and her objective ability to work and to carry on with other moderate daily activities. Relying on the Fourth Circuit's decision in Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1970) (claimant was not disabled because she was able to work with those impairments she claimed were disabling), the ALJ noted that prior to 2003, Plaintiff worked for years as a dental hygienist, despite ongoing dry eyes, (Tr. 223, 230, 242, 249, 266-268, 271), and ongoing pain in her hands (Tr. 233).

Plaintiff's other daily activities belie her allegations of disabling pain. Plaintiff asserted at her hearing that her pain ranged from a six (6) at best to over ten (10), on a scale of one (1) to ten (10). (Tr. 518, 521). However, her husband reported that for the same time period, she was able to wash and brush her hair, feed herself, make sandwiches, and drive a car. (Tr. 81-83). Moreover, in May 2005, Plaintiff reported to Dr. McCain that she was exercising on a regular basis. (Tr. 326). Plaintiff also reported that she was able to make ornaments, wash dishes, do laundry, do light vacuuming, dust, and read novels. (Tr. 91). In her brief, Plaintiff insists that she did not read novels, but spent most of her time reading on the internet. See "Memorandum in Support ..." at 16-17 (document #9). Such a distinction makes little difference in supporting Plaintiff's credibility. However, it does suggest that she could navigate a keyboard and a computer mouse. See Johnson,

9

434 F.3d at 658 (upholding the ALJ's finding that Plaintiff's ability to read, attend church, perform chores and stretches was inconsistent with her allegations of disabling pain).

Similarly, Plaintiff's activities belie a disabling eye problem. Although Plaintiff testified that her vision became blurry while she treated patients and that the face masks she was required to wear made her vision foggy, she and her husband admitted that she was able to drive and perform household chores. She was also able to read the text on a computer screen. Moreover, as noted above, medical records reflected Plaintiff's Sjogren's syndrome and associated eye symptoms were "mild" and controlled. (Tr. 297, 323, 326-327, 329). See Mickles, 29 F.3d at 921 (observing that "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.")

Finally, the Plaintiff has failed to show that the "new" evidence she seeks to offer now warrants remand for further administrative proceedings. As discussed in Section II above, in order for a reviewing court to remand a case for the consideration of additional evidence, the evidence must be new, material, and there must be good cause for failing to present the evidence earlier. See 42 U.S.C. § 405(g); Wilkins, 953 F.2d at 95-96; and Williams, 905 F.2d at 216.

Plaintiff submits for the first time additional evidence consisting of an office note from treating physician Dr. John Goldman, as well as the Jamar Hydraulic Hand Dynamometer Owner's Manual. See "Memorandum in Support ..." at 21-22, Attachment A, Attachment B (document #9). Dr. Goldman's note, dated November 11, 2003, reflects only that Plaintiff complained to Dr. Goldman that her pain and fatigue were "very big." In other words, this report is merely cumulative evidence of Plaintiff's subjective complaints of pain, which as discussed above, the ALJ properly discounted. Accordingly, Dr. Goldman's note is neither new nor material, and does not meet the

criteria for remand.[7]

Plaintiff next claims that the Owner's Manual for the Jamar Hydraulic Hand Dynamometer is relevant for illuminating the significance of Plaintiff's grip test results with Dr. Goldman. As Defendant points out in his brief, Plaintiff's grip was tested with this piece of equipment prior to her alleged disability onset date (August 28, 2003). It is not readily apparent what relevance or materiality the owner's manual would have for evaluating the grip test results. Moreover, the grip tests support rather than contradict the ALJ's determination. The tests show that prior to her alleged onset date, she was able to work with a reduced grip strength. Consequently, the Plaintiff's reliance on the owner's manual is misplaced.

In short, although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records and ultimate determination that Plaintiff was not disabled.

---

[7] The Court notes that Plaintiff submitted additional evidence to the Appeals Council with her request for review, which the Appeals Council incorporated into the record. (Tr. 12-16, 334-493). The Appeals Council reviewed this evidence and determined that it did not provide a basis for changing the ALJ's decision (Tr. 12-13).

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment and Motion to Expand the Record" (document #8) be **DENIED**; that Defendant's "Motion for Judgment on the Pleadings" (document #10) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED AND ORDERED**.

Signed: May 28, 2009

David S. Cayer
United States Magistrate Judge